UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

    - v. -                                    S2 12 Cr. 863 (LAP)

JERMAINE NIBBS,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# GOVERNMENT'S MEMORANDUM IN OPPOSITION TO THE DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEA

                                                    PREET BHARARA
                                                    United States Attorney for the
                                                    Southern District of New York

Rahul Mukhi
Brendan F. Quigley
Daniel Tehrani
Assistant United States Attorneys
  - Of Counsel -

...

## TABLE OF CONTENTS

Page

**BACKGROUND** .......................................................................................................................- 1 -

    I.    The Investigation and Offense Conduct ........................................................................- 1 -

    II.    The Plea Agreement and the Defendant's Guilty Plea..................................................- 3 -

    III.    Proceedings Following the Guilty Plea........................................................................- 5 -

**DISCUSSION** .........................................................................................................................- 5 -

    I.    The Applicable Law......................................................................................................- 5 -

    II.    Discussion ....................................................................................................................- 7 -

        A.    The Defendant's Plea Was Voluntary ......................................................................- 7 -

        B.    The Defendant Cannot Show Any Other Reason to Withdraw His Guilty Plea, and the Government Would Be Prejudiced by Withdrawal at this Juncture ............................- 12 -

**CONCLUSION** ....................................................................................................................- 13 -

The Government respectfully submits this memorandum of law in opposition to the defendant's motion seeking to withdraw his guilty plea. As set forth in more detail below, the defendant cannot establish a fair and just reason to withdraw his plea. The defendant's plea was voluntary; he was well aware of his sentencing exposure, having been explicitly advised about the potential penalties he faced both in a written plea agreement and on the record at the plea proceeding; and the Government would be prejudiced if the defendant were allowed to withdraw his plea at this late juncture, over a year after it was entered. Accordingly the Court should deny the defendant's motion.

## BACKGROUND

### I. The Investigation and Offense Conduct

In or about November 2011, the New York Police Department ("NYPD"), Bronx Narcotics Division, began investigating an organization that was dealing large amounts of crack in the vicinity of a housing project called the Mott Haven Houses (the "Mott Haven Organization" or the "Organization"). The investigation was spurred by community complaints of rampant drug dealing and violence in the neighborhood. The investigation centered on introducing undercover detectives ("UCs") to the dealers who were supplying and selling crack as part of the Mott Haven Organization. Three UCs in particular made dozens of undercover drug buys over the course of the year-long investigation. Many of these transactions were captured in video and audio recordings. The sales took place both outside and inside of public apartment buildings.

Defendant Nibbs was personally involved in at least 14 sales to the UCs between December 2011 and August 2012. Eight of these sales were videotaped. Based on the way a number of these sales took place, as well other evidence obtained during the investigation, the Government determined that the defendant was a supplier for the Mott Haven Organization. For

example, UCs observed Nibbs re-supply other members of the Organization, and, when Nibbs was not in the Mott Haven area, he stated that he could arrange for other members of the Organization to sell crack to the UCs.

Ultimately, in early December 2012, 26 members of the Organization were charged in superseding indictment S2 12 Cr. 863, with conspiring to distribute, and possess with the intent to distribute, 28 grams and more of crack, in violation of 21 U.S.C § 841(b)(1)(B) and § 846. The NYPD arrested the defendant and other members of the Organization on December 13, 2012. At the defendant's initial appearance later that day, Jesse Siegel, Esq., was appointed to represent him.

After the members of the Organization were arrested, one member of the Organization began proffering with the Government and ultimately pled guilty to a cooperation agreement ("CW-1"). CW-1 confirmed that defendant Nibbs was a supplier for the Mott Haven Organization. Based on the information provided by CW-1, the Government believes it could have established that the conspiracy involved 280 grams or more of crack, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846, significantly more than the 28 grams or more charged in the S2 Indictment against the defendant.

The proceedings against the defendant and the other members of the Organization continued through 2013. On April 11, 2013, the Court relieved Mr. Siegel and appointed Susan Tipograph, Esq. to represent the defendant. After being appointed, Ms. Tipograph, among other things, made a written submission to the Government, asking the Government to allow the defendant to plead guilty to the lesser-included-offense of conspiring to distribute mixtures and substances containing a detectable amount of crack, in violation of 21 U.S.C. § 846 and § 841(b)(1)(C). The Government declined that request.

## II.     The Plea Agreement and the Defendant's Guilty Plea

The defendant pled guilty, pursuant to a plea agreement (the "Plea Agreement"), on July 24, 2014. When the defendant pled guilty, trial was scheduled for September 8, 2014.

In the Plea Agreement, the Government made a number of concessions to the defendant. First, it allowed the defendant to plead guilty to the offense charged—a violation of 21 U.S.C. § 841(b)(1)(B) and § 846—rather than seeking a superseding indictment charging a violation of 21 U.S.C. § 841(b)(1)(A) and § 846. The Government would have likely sought such an indictment had the case proceeded to trial, and a conviction on that charge would have carried a ten-year mandatory minimum, *see* 21 U.S.C. § 841(b)(1)(A). Second, the Government also agreed to refrain from filing two prior felony informations based on the defendant's prior narcotics felony convictions in New York state court. *See* Plea Agreement, Ex A. at 1. If the Government had filed these informations, the defendant would have faced additional increased mandatory minimum penalties.

The first page of the Plea Agreement explicitly states the penalties that the defendant is facing as a result of pleading guilty. It explains, among other things, that the offense carries a "maximum sentence of 40 years' imprisonment [and] a mandatory minimum sentence of five years' imprisonment . . . ." Ex. A at 1. The parties also agreed that the offense involved "at least 28 grams but less than 112 grams of" of crack and that, because of his two prior felony convictions, the defendant was a "Career Offender" under the Sentencing Guidelines, resulting in a Guidelines range of 188 to 235 months' imprisonment. *Id*. at 2-4. The defendant agreed not to appeal or otherwise challenge a sentence within or below this Guidelines range. *Id.* at 5.

When the parties appeared before the Court for the plea proceeding on July 24, 2014, the Court began by placing the defendant under oath and warning him that he, if he answered any of

the Court's questions falsely, he could be prosecuted "for perjury or the making of a false statement." Ex. B, Plea Transcript, at 2.  The defendant stated he understood.  *Id.*

The Court then asked the defendant a series of questions to ensure that he was competent and that he understood the proceedings.  *Id.* at 2-4.  In answering these questions, the defendant confirmed he could "read, write, speak, and understand English"; that he was not under the influence of any substance "that might affect [his] ability to understand" the proceedings; and that he felt well enough to understand what was going on in court that day.  *Id.*

Then, in response to additional questions from the Court, the defendant confirmed that he had received a copy of the operative indictment; that he had gone over it with his attorney; that she had explained the charges to him; and that he had told everything he knew "about the matters that are set out in the indictment."  *Id.* at 4. The Court also confirmed that the defendant had entered into the Plea Agreement and had the Government summarize the most salient terms of the Agreement, including the stipulated Guidelines range of 188 to 235 months' and the defendant's waiver of his right to appeal a sentence within or below that range.  *Id.* at 4-5.  After this, the Court verified with the defendant that he had "enough time of review the agreement and to go over it with [prior counsel] and to have all of [his] questions answered."  *Id.* at 5.  In addition, the Court reiterated the fact that Plea Agreement contained a stipulated Guidelines range of 188 to 235 months' imprisonment and that the defendant agreed to waive a sentence within or below that range.  *Id.* at 5-6.  The defendant stated that he was aware of these provisions.  *Id.* at 6.

In response to additional questions from the Court, the defendant also made clear that he was pleading guilty of his own free will and not as the result of any inducements, other than those contained in the plea agreement.  *Id.* at 7.  In addition, the defendant explicitly stated that

he understood that he could plead not guilty and go to trial; that at any trial, he would have certain rights, including the right to counsel and the presumption of innocence; and that, by pleading guilty, he was giving up those rights.  *Id.* at 7-8.

The defendant also confirmed that he was "fully satisfied with the advice, counsel and representation given to [him] by [his] attorney, Ms. Tipograph," *id.* at 10, and that he was pleading guilty because he was "in fact guilty," *id.* at 11.  Finally, after the Court asked the defendant to explain what he did, the defendant admitted that "between November 2001 and October 2012, [he] agreed with other people to distribute 28 or more grams of crack cocaine.  This took place in the Bronx, New York.  I knew what I was doing was wrong and against the law." *Id.* at 11.

At the end of the proceeding, the Court found—based on the Court's observations of the defendant during the proceedings and his allocution—that "the defendant [was] fully competent and capable of entering an informed plea, and this his plea of guilty is knowing and voluntary and is supported by an independent basis in fact . . . ."  *Id.* at 12.

### III.  Proceedings Following the Guilty Plea

The defendant's sentencing was adjourned several times.  During this time, the defendant participated in one proffer session with the Government.  On April 8, 2015, Ms. Tipograph asked to be relieved, based on allegations the defendant had raised about her representation of him.  The Court granted that motion and appointed the defendant's current counsel.  On July 13, 2015, almost a year after pleading guilty, the defendant filed this motion to withdraw his guilty plea.

## DISCUSSION

### I.  The Applicable Law

"[S]ociety has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also

- 5 -

increases the volume of judicial work, and delays and impairs the orderly administration of justice." *United States* v. *Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997) (internal quotation marks omitted); *see also United States* v. *Hyde*, 520 U.S. 670, 676-77 (1997) (observing that permitting "defendant[s] to withdraw [their] guilty plea[s] simply on a lark . . . would degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess"). Accordingly, a defendant may not withdraw a guilty plea unless he shows "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The defendant "bears the burden of demonstrating valid grounds for withdrawal," *United States* v. *Adams*, 448 F.3d 492, 498 (2d Cir. 2006), and that standard is a "stringent" one, *United States* v. *Schmidt*, 373 F.3d 100, 103 (2d Cir. 2004).

In determining whether the defendant has shown a "fair and just reason" to justify withdrawal, a district court "should consider, *inter alia*: (1) the amount of time that has elapsed between the plea and the motion; (2) whether the defendant has asserted a claim of legal innocence; and (3) whether the government would be prejudiced by a withdrawal of the plea." *United States* v. *Doe*, 537 F.3d 204, 210 (2d Cir. 2008). The absence of prejudice to the government is immaterial where the defendant has failed to demonstrate sufficient grounds for a plea to be withdrawn. *See, e.g., United States* v. *Torres*, 129 F.3d 710, 715 (2d Cir.1997).

Where a defendant premises his withdrawal motion on allegations that he entered his plea involuntarily, his burden is heavy, as he "must raise a significant question about the voluntariness of the original plea." *Doe*, 537 F.3d at 211. That standard is not met when a defendant offers only "bald statements that simply contradict what he said at his plea allocution." *United States* v. *Gonzalez*, 647 F.3d 41, 56 (2d Cir. 2011); *see also Blackledge* v. *Allison*, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant, his lawyer, and the prosecutor at

[a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); *Adames* v. *United States*, 171 F.3d 728, 732 (2d Cir. 1999) ("A criminal defendant's self-inculpatory statements made under oath at his plea allocution carry a strong presumption of verity, and are generally treated as conclusive in the face of the defendant's later attempt to contradict them.") (citations and internal quotation marks omitted).

Where, as here, a defendant contends that his guilty plea was not voluntary because of his lawyer's ineffectiveness, courts apply the two-part standard set forth in *Strickland* v. *Washington*, 466 U.S. 668, 688 (1984). *See Hill* v. *Lockhart*, 474 U.S. 52, 57-58 (1985). The first prong considers whether counsel's performance was objectively unreasonable "under prevailing professional norms." *Strickland*, 466 U.S. at 688. Under the second prong, the defendant must affirmatively prove prejudice by showing that counsel's errors were so serious that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 687, 694. In the context of a guilty plea, this means that "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

## II.     Discussion

### A.     The Defendant's Plea Was Voluntary

First, the Court should reject the defendant's claim that his plea was involuntary. The defendant now claims that his prior counsel coerced to plead guilty by telling him that, if he did plead guilty, he would receive a sentence of 60 months, the mandatory minimum. Def.'s Mem. of Law at 5.

The factual record, however, belies these claims.  The Plea Agreement, which the defendant, under oath, acknowledged that he had reviewed with his attorney and that he had signed, Ex. B at 5-6, explicitly states that the offense of conviction carries a potential maximum sentence of 40 years' imprisonment, Ex. A at 1.  Further, the defendant also agreed in the Plea Agreement that the applicable Guidelines range was 188 to 235 months' imprisonment, *id.* at 4, i.e., obviously well more than 60 months.

And at the plea proceeding itself, the Court explicitly advised the defendant about the penalties he faced, and the defendant acknowledged he understood those penalties.  Specifically, the Court advised the defendant that "upon your plea of guilty to this charge, the Court has the power to impose upon you a maximum sentence of 40 years in prison."  Ex, B at 8.  Again, the defendant, who was under oath at the time, stated that he understood the potential penalties he faced.  *Id.* at 9.  The defendant also, acknowledged that he had stipulated with the Government that his Sentencing Guidelines range was 188 to 235 months' imprisonment.  Ex. B at 5-6.

Thus, despite being told numerous times that he faced a sentence of greater than 60 months, the defendant did not, at any point, indicate that he was unaware of, or confused about, his potential sentencing exposure.  Moreover, the defendant's under-oath statements at his plea proceeding carry "'a strong presumption of verity.'"  *United States* v. *Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001) (quoting *Blackledge* v. *Allison*, 431 US. 63, 74 (1977)); *see also United States* v. *Hernandez,* 242 F.3d 110, 112 (2d Cir. 2001) ("[T]he district court was entitled to rely upon the defendant's sworn statements, made in open court with the assistance of a translator, that he understood the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw the plea, understood that he was waiving his right to appeal a sentence below 120 months, and had been made no promises except those contained in the plea agreement.").

In short, the Court should reject the defendant's self-serving statements in his affidavit that he had been misled as to his potential sentence because those statements are inconsistent with the defendant's sworn statements in Court and with the information contained in the Plea Agreement that the defendant signed.

In any event, even if the Court did credit the defendant's assertions in his affidavit, the defendant would still be unable to establish the "prejudice" prong of the *Strickland* test because there is no "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.  Where, as here, "defendant's specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty, . . . the issue is whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a plea." *Ventura* v. *Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992) (citing cases) (internal quotation marks omitted).  "Factors to be considered by the district court in determining whether a defendant would have decided not to plead guilty and insisted instead on going to trial include (a) whether the defendant pleaded guilty in spite of knowing that the advice on which he claims to have relied might be incorrect, (b) whether pleading guilty gained him a benefit in the form of more lenient sentencing, (c) whether the defendant advanced any basis for doubting the strength of the government's case against him, and (d) whether the government would have been free to prosecute the defendant on counts in addition to those on which he pleaded guilty." *Chhabra* v.*United States*  720 F.3d 395, 408 (2d Cir. 2013) (citation omitted).

All of these factors weigh heavily against the defendant here.

First, the Plea Agreement and the record of the plea proceeding make clear that, whatever advice he received from prior counsel, the defendant was "aware of the actual sentencing possibilities," which cures any defect in the advice he claims to have received from counsel. *Ventura*, 957 F.2d at 1058 (holding that, because defendant pled after "having been made aware" of the "actual sentencing possibilities," he could not show prejudice based on inaccurate advice allegedly received from counsel regarding his sentencing exposure).[1]

Second, the defendant received "a meaningful strategic benefit by pleading guilty"— most notably the Government's agreement to refrain from filing two prior felony informations and a three-point Sentencing Guidelines reduction for acceptance of responsibility —further undercutting any claim "that an involuntary or ill-advised plea ensued." *Padilla v. Keane,* 331 F. Supp. 2d 209, 217 (S.D.N.Y.2004) (citing *Feliz v. United States,* No. 01 Civ. 5544( JFK), 2002 WL 1964347, at *7 (S.D.N.Y. Aug. 22, 2002) ("[N]o prejudice exists when a plea agreement lessens the severity of the sentence a defendant would face if convicted at trial.").  The Government also refrained from seeking a superseding indictment against the defendant.

---

[1] *Accord Shah* v. *United States*, No. 10 CR 1169 WHP, 2013 WL 1641167, at *4 (S.D.N.Y. Apr. 16, 2013) ("When a petitioner claims his counsel mislead him as to the possible sentence which might result from [his] plea, he cannot overcome *Strickland's* prejudice prong if he was made aware of the actual sentencing possibilities and entered into the plea agreement anyway." (quotation omitted)); *United States* v. *Peterson,* 896 F. Supp. 2d 305, 314 (S.D.N.Y. 2012) ("Even assuming that counsel told Peterson prior to his guilty plea that he would receive a sentence of only 18 to 33 months, the record demonstrates that Peterson was aware of his actual sentencing possibilities by the time he entered his plea. . . .  Thus, because the record demonstrates that Peterson was aware of his sentencing possibilities, Peterson has not shown that he would have gone to trial but for counsel's error.")

Third, the defendant has not advanced any basis for doubting the strength of the Government's case against him, beyond his mere "belie[f]" [2] that he is not responsible for distributing 28 grams of more of crack.

Fourth, had the defendant not pled guilty and proceeded to trial, the Government would have sought a superseding indictment that would have contained increased penalties on the conspiracy count and, in all likelihood, added substantive counts for some or all the 14 sales that the defendant himself made to the UCs.

In sum, particularly because the record is clear that the defendant knew about his actual sentencing exposure and because he received a significant benefit by pleading guilty, he cannot establish the prejudice prong of the *Strickland* test.

Accordingly, the defendant's plea was voluntary and not the result of bad advice that he allegedly received from counsel.[3]

---

[2] *See* Nibbs Decl. ¶ 6 (admitting that "[he] participated in a conspiracy to distribute some amount of cocaine base").

[3] Because the defendant cannot meet the prejudice prong of the *Strickland* test, there is no need for an evidentiary hearing regarding the advice he received from prior counsel.

### B. The Defendant Cannot Show Any Other Reason to Withdraw His Guilty Plea, and the Government Would Be Prejudiced by Withdrawal at this Juncture

Nor can the defendant show any other reason to withdraw his guilty plea.

*First*, the amount of time between the defendant's guilty plea weighs against withdrawal. Almost a year passed between the defendant's July 24, 2014 guilty plea and the filing of this motion on July 13, 2015. The Second Circuit has repeatedly found that delays of even five to seven months support upholding the original plea. *See Doe,* 537 F.3d at 213 (finding that the defendant's five-month delay in filing his motion "strongly supports the district court's finding that his plea was entered voluntarily"); *United States* v. *Gonzalez*, 970 F.2d 1095, 1100 (2d Cir 1992) ("Gonzalez's assertion of his innocence is undercut by its timing, coming nearly seven months after the plea."); *Torres*, 129 F.3d at 715 (seven-month delay counseled against entertaining defendant's motion).

Second, the defendant does not claim to be actually innocent of the charges in the indictment. To the contrary, he "admit[s] . . .participat[ing] in a conspiracy to distribube some amount of cocaine base" but does not "*believe* that [he is] responsible for 28 grams or more." Nibbs Decl. ¶ 6 (emphasis added).

Finally, although the Government need not show prejudice to defeat a motion to withdraw a guilty plea where, as here, the defendant has presented no valid basis for withdrawal, *Torres*, 129 F.3d at 715, the Government would, in fact, be prejudiced if the defendant were allowed to withdraw his plea at this stage. The defendant baldly asserts that "the witnesses and evidence that the government would need at a trial remain under the government's control." Def.'s Mem. of Law at 7. But this is not true. As noted above, during the course of this investigation, a member of the Mott Haven Organization, CW-1, pled guilty pursuant to a cooperation agreement. Based on CW-1's anticipated testimony at trial, the Government would

have sought a superseding indictment if Nibbs had not pled guilty, charging him with conspiring to distribute 280 grams and more of crack, in violation of 21 U.S.C. § 846 and § 841(b)(1)(A), which carries a ten-year mandatory minimum sentence, even absent the filing of a prior felony information.  Based on Nibbs' guilty plea and the guilty pleas of the overwhelming majority of the other Mott Haven defendants, the Government agreed to have CW-1 sentenced in March 2015, four months before the filing of this motion.  CW-1 was sentenced to time served and thus is no longer under the Government's control.  As such, the Government would be prejudiced if the defendant were allowed to withdraw his plea at this juncture.

Accordingly, the defendant cannot show a fair and just reason to withdraw his guilty plea.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the defendant's motion to withdraw his plea should be denied.

Dated:  New York, New York
       July 28, 2015

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney
                              for the Southern District of New York

By:  _____
       Rahul Mukhi
       Brendan F. Quigley
       Daniel Tehrani
       Assistant United States Attorneys
       Tel.:  (212) 637-1581 / 2190 / 2455